IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


NATHANIEL BROWN                          :
                                         :            CIVIL ACTION
          v.                             :
                                         :            NO. 09-2565
ROBERT LAWLER, ET AL.                    :


**MEMORANDUM**

**SURRICK, J.**                                    **OCTOBER  13, 2016**

Presently before the Court is the *pro se* Petition For Writ of Habeas Corpus filed pursuant to

28 U.S.C. § 2254 (ECF No. 1) filed by Nathaniel Brown, Magistrate Judge Thomas J. Rueter's

Report and Recommendation recommending denial of the Petition (R&R, ECF No. 14), and

Petitioner's Objections to the Report and Recommendation (ECF No. 16).   Also before the Court is

Petitioner's Motion to Appoint Counsel.   (ECF No. 13.)   For the following reasons, we will

overrule the objections, approve and adopt the Report and Recommendation, dismiss the Petition,

and deny Petitioner's Motion to Appoint Counsel.

## I.      BACKGROUND

On June 27, 2003, after a jury trial in the Court of Common Pleas of Philadelphia County,

Pennsylvania, Petitioner was found guilty of rape and theft by unlawful taking.   Petitioner was

sentenced to a term of imprisonment of not less than five and one-half years nor more than twenty

years on the rape conviction, with a consecutive sentence of not less than two years nor more than

four years on the theft conviction.   Petitioner filed a direct appeal.   On January 10, 2005, the

Superior Court of Pennsylvania affirmed the judgment and the sentence.   The Pennsylvania

Supreme Court denied review on May 24, 2005.   On January 25, 2006, Petitioner filed a Petition

under Pennsylvania's Post Conviction Relief Act ("PCRA").   The Petition was dismissed on July

26, 2007.   Petitioner filed an appeal in the Superior Court of Pennsylvania.   On July 14, 2008 the Superior Court affirmed the dismissal of the PCRA petition.   The Pennsylvania Supreme Court denied review on February 3, 2009.   Petitioner then filed the instant Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.   (*Id*.)

Petitioner makes the following four claims of ineffective assistance of counsel:   (1) failure to meet with Petitioner and conduct a pretrial interview; (2) failure to present hospital records that would exonerate Petitioner; (3) failure to object to the theory of the lead detective and prosecutor concerning DNA evidence; and (4) failure to file an appeal.   Petitioner has also requested an evidentiary hearing and moved for appointment of counsel.   (*Id*.)

Magistrate Judge Thomas J. Rueter filed a Report and Recommendation recommending that we dismiss the Petition in its entirety.   Magistrate Judge Rueter found that Petitioner had failed to show that trial counsel was ineffective or that he suffered prejudice as a result of counsel's ineffectiveness.   (*Id*. at 11, 13-14.)   Petitioner filed Objections to the Report and Recommendation with regard to all four claims.   In his objection, Petitioner argues that his trial counsel was ineffective for failing to obtain DNA testing.   Petitioner also argues that counsel's trial tactics showed that he was not prepared for trial.   In addition, Petitioner argues that counsel was ineffective for failing to present hospital records at trial and for failing to object to the Commonwealth's DNA theory.   Finally, Petitioner asserts that counsel was ineffective for failing to file an appeal.

The facts upon which Petitioner's convictions are based were set forth in the opinion of the trial court in support of the judgment of sentence, and adopted by the Superior Court of Pennsylvania in its opinion affirming the judgment of sentence.   The facts are as follows:

On June 24, 2002, Tosha Bullock and her sister, Keisha Davenport, were looking for

their stepfather, Thomas Burnett, inside the Mitten building on Temple University's campus where he worked in catering. N.T. 6/26/03, 46. Upon finding the side door to the building locked, Tosha and Keisha were discussing what to do next when Appellant approached them and asked if they needed to get inside. N.T. 6/26/03, 51. The women told Appellant who they were looking for and Appellant said he could help them get inside. Appellant gave them the impression he worked there as he knew his way around the building very well.

After taking the women inside and after telling various lies, he convinced Tosha to come upstairs alone to see Mr. Burnett. N.T. 6/26/03, 60-62. He explained Mr. Burnett was working a party and his boss would only allow one of the women at a time to speak with him. When Appellant led Tosha up the elevator and down the hall a distance from Keisha waiting downstairs, he forced her into the men's room, pushed her up against the wall and raped her. N.T. 6/26/03, 66-75. He then threw her to the floor and continued to rape her. N.T. 6/26/03, 74. She had dropped her car keys during the initial struggle. N.T. 6/26/03, 67. After the rape, Appellant picked up the keys, threatened her against moving and said he was going to get Keisha.

She considered jumping out of the window to get away but then decided to chance running down the steps to Keisha. N.T. 6/26/03, 78-81. Keisha had been on the phone with police, reporting that Appellant stole the car. When the police responded, the women described the rape, the car, and Appellant.

Tosha was taken to Episcopal hospital where a rape kit was performed. N.T. 6/26/03, 86. Her vulva and vagina tested positive for the presence of sperm. N.T. 6/27/03, 42. The sperm in her vulva was a positive match with Appellant. Appellant could not be excluded as the source of the sperm in Tosha's vagina but there was an insufficient amount of material to say definitely a match occurred. N.T. 6/27/03, 44.

Tosha was interviewed by Detective Meissler who asked Detective Lichtenhahn to show the victim photographs on the computer. N.T. 6/27/03, 51. Tosha picked out Appellant's photograph on the imaging machine. N.T. 6/27/03, 51.

Tosha's car was found on June 29, 2002 by Philadelphia police officers on patrol. At roll call, officers were told of the stolen car in this case. During their shift, Officers Dickerson and Williams spotted the parked vehicle. N.T. 6/26/03, 180-181. The vehicle was taken to the police garage and the police obtained a consent to search the vehicle. Inside, officers found Appellant's pay stub from the period 6/17/02 to 6/23/02 from his employer, Best Food Company, which was affiliated with Temple University. N.T. 6/26/03, 188, 6/27/03, 53.

An arrest warrant was issued based on the identification, the DNA evidence and the pay stub in the stolen vehicle. N.T. 6/27/03, 52-53. Appellant was arrested on

July 1, 2002 and a search of his person revealed the key to the stolen car.   N.T. 6/27/03, 56; 6/23/03, volume.

*Commonwealth v. Brown*, No. 0924, slip op. at 2-3 (C.P. Phila Mar. 22, 2004).

We have carefully reviewed the entire record, the Report and Recommendation, and Petitioner's objections and we independently conclude that Magistrate Judge Rueter was correct. All of Petitioner's claims are without merit.   Accordingly, the Objections to the Report and Recommendation will be overruled and the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 will be dismissed.

## II.    LEGAL STANDARD

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), requires courts to employ a deferential "reasonableness" standard of review to a state court's judgment on constitutional issues raised in habeas petitions.   *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 903 (3d Cir. 1999); *see also Lindh v. Murphy*, 521 U.S. 320, 334 n.7 (1997) (describing AEDPA's standard of review as "highly deferential" to a state court's determinations).   A federal court may overturn a state court's resolution on the merits of a constitutional issue only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).   The Supreme Court has determined that the "contrary to" and "unreasonable application of" clauses have independent meaning:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).   "[A] federal habeas court may not issue the writ [of habeas corpus] simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather, that application must also be unreasonable."   *Id*. at 411.

This Court must apply a deferential standard to a state court's determination of the facts.   A state court's determination of a factual issue is "presumed to be correct," and may be rebutted only by "clear and convincing evidence."   28 U.S.C. § 2254(e)(1).   Habeas relief predicated on an alleged factual error will be granted only if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   *Id*. § 2254(d)(2).

We review *de novo* those portions of the Report and Recommendation to which specific objections have been made.   28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 141-42 (1985) ("[A] United States district judge may refer . . . petitions for writ of habeas corpus [] to a magistrate, who shall conduct appropriate proceedings and recommend dispositions . . . . [A]ny party that disagrees with the magistrate's recommendations 'may serve and file written objections' to the magistrate's report, and thus obtain *de novo* review by the district judge." (citations and footnotes omitted)).

## III.   DISCUSSION

### A.   Objection 1:   Ineffective Assistance of Counsel—Lack of Preparation

In his first objection, Petitioner challenges the Report and Recommendation finding that counsel was prepared for trial.   Petitioner asserts that trial counsel was ineffective "for failing to meet with petitioner and conduct any pre-trial interview."   (Pet. 9.)   Petitioner argues that the first time he met with his trial counsel, Lewis P. Hannah, Esquire, to discuss this case, was on the first

scheduled day of trial.   (Pet'r's Mem. 4, ECF No. 8.)

The record reveals that the first day of trial was not the first time Petitioner met with trial counsel.   The transcripts reveal that Hannah prepared and filed a motion to suppress evidence and that Hannah represented Petitioner on that motion to suppress at a suppression hearing three days prior to the start of trial.[1]   (*Id*.)   The transcripts also indicate that Petitioner had retained Hannah as counsel a month earlier.   (*Id*.)   On the first day of trial, Hannah filed two motions *in limine* on behalf of Petitioner, which were ultimately denied by the Court.   Hannah also subpoenaed two witnesses for the defense.   When Petitioner complained that he had only met with Hannah once before, Hannah responded that he had "spoken with [Petitioner] extensively."   (*Id*. at 11.)   The Magistrate Judge observed that Hannah's preparation was evident from his "probing direct and cross examination," as well as the fact that he presented the testimony of witnesses in support of Petitioner's defense.   (R&R 11.)   We agree with that observation.

Petitioner also makes several arguments regarding counsel's trial tactics and how they revealed his lack of preparation.   Petitioner argues that counsel's unpreparedness was evident from the following actions at trial:   counsel's failure to have the DNA evidence independently tested; counsel's decision to change his defense strategy during trial; and Counsel's failure to present certain testimony and evidence to aid in Petitioner's defense.   (Objections 2-3.)

The Supreme Court has not established "specific guidelines for appropriate attorney conduct" but has instead "emphasized that 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"   *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (alterations in original).   However, "[b]ecause of the difficulties inherent in making the

---

[1] Petitioner contends that he was not present at the suppression hearing and that the trial transcripts are fabricated.

evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks omitted).   To overcome that presumption, "a habeas petitioner must show either that (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy."   *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).   In this case, Petitioner has failed to overcome the presumption.

Petitioner argues that counsel's failure to have the DNA evidence independently tested reveals his lack of preparation for trial.   (Objections 2-3.)   At trial, the Commonwealth's DNA expert testified that the DNA test established with 99.92 percent certainty that Petitioner was the donor of the sperm located on the outside of the victim's vagina.   The expert could not conclusively say that Petitioner was the source of the sperm found inside the victim's body.   Trial counsel cross-examined the Commonwealth's DNA expert extensively and effectively.   In light of the 99.92 percent certainty, Defense counsel's decision to not hire an independent expert for additional DNA testing was within the range of reasonable professional assistance and constituted a sound trial strategy.   However, even if one were to somehow conclude that defense counsel should have hired a DNA expert, and that expert testified that the DNA tests were inconclusive, the result would have been the same.   Petitioner has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   As discussed in the Report and Recommendation, Petitioner's arrest warrant was based on more than just DNA evidence.   The arrest warrant was issued based on a positive identification by the victim.   In addition, the perpetrator of the crime took the victim's keys

7

and her car.   When the police found the car, one of Petitioner's pay stubs was found in the car.

Finally, the victim's car keys were found in Petitioner's pocket.   All of this evidence was presented

to the Jury.   Even without the DNA evidence, the evidence against Petitioner was overwhelming.

Any suggestion that there is a reasonable probability that the jury's verdict would have been

different but for counsel's preparedness is silly.

Petitioner has also failed to overcome the presumption that trial counsel's decision to change

trial strategy and to forgo presenting certain evidence and witnesses was sound.   Petitioner simply

states that counsel "tried to create a defense simply stating because the defendant was on

medication, this is why he would be able to take advantage of the victim."   Petitioner then states

that counsel "changed his trial tactics and then said to the jury 'this happened because of money.'"

(Objections 2.)   Petitioner also argues that counsel failed to call witnesses and present certain

pieces of evidence that could have helped in his defense.   (*Id*. at 3.)   Petitioner has offered nothing

but bald conclusory statements.

Petitioner has done nothing to show that counsel's decision to change trial strategies was not

a sound trial tactic that falls within the range of reasonable professional assistance.   Moreover, the

Third Circuit has determined that counsel's decision to not call certain witnesses is a "trial strategy,"

which should be afforded "appropriate deference."   *Philson v. Barbo*, 77 F. App'x 123, 127 (3d Cir.

2003).   Petitioner has provided no facts to support his assertions.   He has failed to meet his burden

under *Strickland* and has provided insufficient grounds for habeas relief.   Accordingly, Petitioner's

first objection is overruled.

**B.     Objections 2 & 3: Ineffective Assistance of Counsel—Failure to Present Hospital Records & Object to DNA Evidence Theory**

In his second and third objections, Petitioner challenges the conclusion that trial counsel was

8

not deficient for:   (1) failing to present hospital records "that would have exonerated him"; and for (2) failing to object to the prosecution's theory regarding DNA evidence.   (Objections 4.)   In Petitioner's Memorandum of Law in support of his Petition, he asserts that trial counsel did not test the DNA evidence because "the District Attorney told him that the arrest warrant was based on identification and DNA evidence. . . . But now the transcripts are saying that an arrest warrant was based on a key to a stolen car, identification, and things like that."   (Pet'r's Mem. 5.)   In the Report and Recommendation, Magistrate Judge Rueter concluded that Petitioner had failed to establish that trial counsel's performance was deficient and that Petitioner suffered prejudice as a result of the deficient performance, because Petitioner's assertions were "conclusory allegations without specific facts supporting a claim."   (R&R 13.)   Petitioner's objection focuses on the DNA evidence and overlaps with the arguments made in his first objection.   Petitioner argues that "there is not nor was there any semen found on the victim from the defendant," and that if the DNA evidence is tested, it will reveal that it is not the DNA of Petitioner.   (Objections 4.)

We agree with the Report and Recommendation that Petitioner has failed to set forth facts to support his contentions.   *See Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987) (concluding that petitioner's vague and general allegations and supporting materials failed to make a sufficient showing to justify relief), *cert. denied*, 484 U.S. 946 (1987).   Petitioner's objections contain nothing more than bald assertions and conclusory allegations that the DNA at issue is not his. Petitioner states that none of his semen was found on the victim.   However, while the expert at trial could not conclude that the sperm found inside the victim's vagina was from Petitioner, he testified that the testing established with 99.92 percent certainty that Petitioner was the donor of the sperm found on the outside of the victim's vagina.   (R&R 13.)   Moreover, Petitioner does not identify any hospital records that would exonerate him.   Petitioner offers no basis upon which to conclude

9

that his trial counsel's performance was deficient with regard to the DNA testing or hospital records, or that Petitioner suffered prejudice as a result of such deficient performance.   Accordingly, Petitioner's second and third objections are dismissed.

### C.        Claim 4:    Ineffective Assistance of Counsel—Failure to File an Appeal

In his fourth objection, Petitioner asserts that counsel failed to file an appeal.   In his Petition, Petitioner baldly asserts that trial counsel was ineffective for failing to file an appeal, without offering any factual support.   (Pet. 9.)   This claim is totally without merit and is unsupported by the record.   (R&R 14.)   A direct appeal was in fact filed in the Superior Court of Pennsylvania, and a petition for allowance of appeal was filed in the Supreme Court of Pennsylvania.   (Resp. Ex. B, ECF No. 12.)   The PCRA court and the Superior Court of Pennsylvania then reviewed Petitioner's PCRA Petition.   (Resp. Ex. C.)   In his objections, Petitioner provides no additional factual support.   He simply reiterates the same meritless claim. The conclusions reached by Magistrate Judge Rueter were factually and legally correct. Petitioner's fourth objection is dismissed.

### D.        Motion to Appoint Counsel

Appointment of counsel is appropriate in a habeas corpus matter only when the "interests of justice . . . require" that representation be provided.   *See* 18 U.S.C. § 3006A(a)(2).   After reviewing the Motion and the record in this case, we conclude that the interests of justice do not require appointment of counsel to address the issues raised in the Petition for Writ of Habeas Corpus and subsequent Objections to the Report and Recommendation.   We therefore decline to appoint counsel for Petitioner.

### E.        Certificate of Appealability

The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Cir. L.A.R. 22.2.   Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   As discussed above, Defendant has raised no viable claims, and no reasonable juror would disagree with our assessment.   Therefore, a certificate of appealability will not issue.

## IV.   CONCLUSION

After a thorough review of the record in this case, we are compelled to conclude that Petitioner's claims are wholly without merit.   None of the claims constitute a basis on which to grant habeas corpus relief.   Accordingly, the Petition for Writ of Habeas Corpus must be denied. An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**